HENRY S. McCOMB, JACOB HILL, JOHN FERGUSON AND JOHN C. IRELAND, defendants below, plaintiffs in error, v. WILLIAM H. SCHOEN, plaintiff below, defendant in error.

A decree in partition in Chancery is final and conclusive between the par-
ties and all claiming under them until appealed from, as to the length of
a line of an allotment of the lands and tenements assigned in severalty

to one of the parties, as the same is described and designated in the proceeding in partition, notwithstanding there is a discrepancy in respect to the length of it, between the partition and all the title papers pertaining to the premises prior to it; and a party claiming under it. will be thereby concluded and estopped from controverting or calling in question the correctness of it, in an action of trespass *quare clausem fregit* brought against him by the owner of adjoining premises, although the latter was not a party or privy to the partition.

Writ of Error to the Superior Court in and for New Castle County, before Bates, Chancellor, and Wootten and Wales, Associate Judges.

This case came up on a writ of error and bill of exceptions taken to the charge of the Court to the jury, in the case of Schoen v. McComb et al., tried at the late term of the Superior Court, in and for New Castle County. It was an action of trespass *quare clausem fregit* by the plaintiff against the defendants for breaking and entering his close, consisting of a house and lot and premises, situate on the South side of Shipley Street, in the City of Wilmington, and adjoining a house, lot and premises formerly owned by McComb, the principal defendant in the suit, but then owned by his mother, to whom he had sold it previous to the alleged commission of the trespass complained of, which was declared to be a breaking and entering into, and the building and erecting of a brick wall by them on, the lot of the plaintiff from its front on Shipley Street, back the entire depth of it; and the main, if not the only question involved in it for the consideration of the jury was, where was the proper and correct location of the partition line between the two lots, with reference to the brick wall so built and erected, the plaintiff contending that it was built a foot over the partition line entirely on his lot, and the defendants that it was not. For a statement of the legal titles of the owners of the respective lots, the limits designated in them, and the charge of the Court to the jury in respect to the same and excepted to by the plaintiff in error, see the case of *Schoen v. McComb. et al. ante p.* 213.

*Bates*, for the plaintiffs in error. In the case below the plaintiffs in error here, but the defendants in the action there, pleaded a freehold in the *locus in quo* in Mrs. McComb, then the owner of the adjoining lot in question, as whose agents and by whose authority and directions they had entered the place in dispute and erected the partition wall referred to; and to sustain that plea and their defence to the action, they put in evidence her claim of legal title to it, commencing with the will of John Ferris who owned it at the time of his death, more than forty years ago, whose executors under the authority of his will, sold and conveyed it on the 15th day of December 1828, to Benjamin Boulden who by his will, probated the 14th day of December 1833, devised it with the residue of his real estate to be equally divided between the devisees named in it, of whom the wife of John McDowell was one. under which by a partition in Chancery instituted for the division of his real estate so devised among the devisees named in it, this lot was assigned in severalty to John McDowell and wife, in right of his wife, by a decree entered therein on the 16th day of November 1852, who sold and conveyed it to Henry S. McComb, one of the defendants in the suit below, by their deed of bargain and sale executed on the 6th day of October 1853, and who in turn sold and conveyed it to his mother, Mrs. Martha McComb, the present owner of it, by his deed of bargain and sale executed on the 20th day of December 1868. In all the deeds he had just referred to, the lot and premises conveyed by them, are described as adjoining the lot owned and occupied by the plaintiff when the alleged trespass was committed, and upon which he alleged it was committed. And in all those deeds it is also described as lying on the South side of Shipley Street, in the City of Wilmington, but in the deed from John McDowell and wife to Henry S. McComb, the line of the lot on that street is described and designated as seventy-one feet and one-sixteen hundredths of a foot in length, whilst in the deed from

Ferris' executors to Benjamin Boulden, it is described as seventy one feet and three inches in length. But in that respect a discrepancy and a palpable error had somehow or other occurred in the survey and plat returned in the proceedings in the partition in the Court of Chancery between the devisees of Benjamin Boulden, under which this lot with its appurtenances was allotted and assigned in severalty to John McDowell and wife, in right of his wife, in which it is described with a line on the South side of Shipley Street, as only seventy feet and one-sixteen hundredths of a foot in length, instead of seventy-one feet and one-sixteen hundredths of a foot in length, as it should have been. The course of the true division or boundary line between the two lots, which is a straight line as called for in the deeds, is at, or nearly at, right angles with the line of Shipley Street, and extends directly back from it about ninety feet in length, and two parallel lines run with the course called for, one at the distance of seventy feet and one-sixteen hundredths of a foot, and the other at a distance of one foot more on the line of the lot on the South side of Shipley Street, would include between them the *locus in quo*, and more than the whole space occupied by the brick wall which was erected by the defendants in that suit. If the first was the correct location of the partition line between the two lots, it was proved and conceded that the wall was entirely on the premises of the plaintiff, but if the second was the correct location of it, then it was entirely on the lot belonging to Mrs. McComb.

It, therefore, became a question before the Court and jury on which the whole action turned; and the counsel for the plaintiff seeking to take advantage of the error which occurred in the plat and return of the surveyor under the proceedings in partition, asked the court to instruct the jury that it was final and conclusive as to the location of the partition line between the two lots, and estopped Mrs. McComb, who derived her title through her son, H. S. McComb, from McDowell and

wife under the partition, to the lot owned by her, and all claiming or acting under her right or authority, as the defendants were, from contradicting the correctness of it, or asserting a claim to any ground beyond it in that action ; whilst the counsel for the defendants contended that such was not the legal effect and conclusion of it as between the parties to that action, and asked the court, on the contrary, to charge the jury in substance and effect as set forth in the bill of exceptions in this case, and that was, first, that by virtue of the title papers offered in evidence on behalf of the defendants, Henry S. McComb, the grantor of Martha McComb, was entitled under the deed from John McDowell and wife, to all the land which in that parcel had been owned by Benjamin Boulden, and which passed by his will to his devisees in common, as the same was described in the deed from the executors of John Ferris to Benjamin Boulden, recited in the deed of McDowell and wife, and that Henry S. McComb was not concluded by the discrepancy between that recital and the Chancery record.   Secondly, that if the court should be unable to instruct the jury to that effect, and Martha McComb had not exclusive title to the whole of the land included in the deed from the executors of John Ferris to Benjamin Boulden, by reason of the discrepancy between the said deed and the said decree,in Chancery, then the court would charge the jury that she was tenant in common with the other devisees of Benjamin Boulden by reason of the conveyance to Henry S. McComb, her grantor, of all the estate, right, title and interest of John McDowell and wife in the land taken by them as devisees of Benjamin Boulden, and being such tenant in common, neither she, nor the defendants acting as her agents and under her direction in the premises, could be guilty of trespass thereon.   But which opinion and instruction the court refused to give the jury, but, on the contrary, charged them on the construction of said title papers, as is also set forth in the bill of exceptions, and which was to the effect that if they were satis-

fied, from the evidence, that John McDowell and wife, in right of his wife, as one of the devisees mentioned, were parties to that partition, and it appeared by the survey and plat returned to the Court of Chancery, and by the partition and decree made and entered in the proceeding in that court, that the house and lot which was afterward sold and conveyed by them to Henry S. McComb, and which was afterward sold and conveyed by him to his mother, Mrs. Martha McComb, was therein and thereby assigned and allotted in severalty to John McDowell and wife, by a line of seventy feet and one-sixteen hundredths of a foot on the South side of Shipley Street, in the city of Wilmington, instead of seventy-one feet and one-sixteen hundredths of a foot thereon, and as running therewith to the extent first mentioned and no further, and that they afterward sold and conveyed the same, but with a line described as seventy-one feet and one-sixteen hundredths of a foot on the South side of that street, by their deed of bargain and sale to Henry S. McComb, his heirs and assigns, and all their right, title, and estate in the lands devised to the wife of McDowell by the will of Benjamin Boulden, yet he and all persons claiming or defending under him, or title derived from him, would be thereby concluded and estopped in this action from claiming or asserting any line of greater length on the South side of Shipley Street, for the house and lot in question, or a line of any other length than that which was described and designated in the allotment and assignment of it in severalty to McDowell and wife in the proceedings in partition and in the decree of the Court of Chancery in that case. And accordingly the jury found a verdict for the plaintiff.

The errors were first, that the court erred in their instructions to the jury, that as the defendants were defending the alleged trespass under a claim of title to the *locus in quo* derived from John McDowell and wife to the lot in question, subsequent to the partition and assignment of it to them in severalty by the decree in the Court

of Chancery, they were restricted and confined to the limit and extent of it on the south side of Shipley Street as described and designated in the assignment of it in that court, and were thereby concluded and estopped from claiming any land not included within it and the partition line between the two lots corresponding with and established by it; secondly, in charging the jury that Henry S. McComb was not entitled under his deed from John McDowell and wife, to all the land devised to his wife and the other devisees in his will, by Benjamin Boulden, as the same is described in the deed from the executors of John Ferris to the latter, and described in the deed from John McDowell and wife to him; thirdly, in refusing to charge when expressly requested so to do, that if Martha McComb had not exclusive title to the whole of the land included in that deed from the executors of John Ferris to Benjamin Boulden, by reason of the discrepancy between that deed and the said decree in Chancery, then that she was tenant in common with the other devisees of Benjamin Boulden, by reason of the conveyance to Henry S. McComb, her grantor, of all the right, title, estate and interest of John McDowell and wife in the land taken by them as devisees of Benjamin Boulden, and being such tenant in common, neither she, nor the defendants acting as her agents and under her direction, could be guilty of trespass thereon; and fourthly, that the court erred in that they confined the jury to the number of feet specified in the return and decree in partition, as the foundation of their verdict, notwithstanding the property was described in the said return and .decree by other boundaries, from which it was for the jury to determine as a question of fact, the extent of the freehold pleaded by the defendants.

In the deed from the executors of Ferris to Benjamin Boulden, the line on Shipley Street is described as seventy-one feet and three. inches in length, and the lot is also described in it as adjoining the lot now owned by the plaintiff, but then owned by Thomas Hyde, while the deed

from McDowell and wife claiming in her right first, as tenants in common with the other devisees under his will, the undivided real estate devised to them in it, and after the partition, the lot and premises in question specifically in severalty,to H. S. McComb for it, and for all their right, title and interest in his real estate, describes it as seventy-one feet and one-sixteen hundredths of a foot in length, and the property also as adjoining the same lot and premises. It was, however, in the proceeding in partition which had preceded the latter deed only by about a year, that the discrepancy of just one foot occurs in the description of the length of the line, even the minute fraction of a foot being retained and being the same in both, and which in itself was proof almost positive, that the discrepancy occurred by an accidental error or oversight of the pensman of the return in the proceeding in Chancery, in omitting to insert the word "one" after the word "seventy" in taking his description of the situation and outlines of the lot from the deed of Ferris' executors to Boulden, the testator. But whether it was such an accidental error or not, if the lot which Boulden, the testator, owned on the south side of Shipley Street adjoining the lot now owned by the plaintiff, and which passed with the rest of his real estate undivided to the devisees named in his will, was bounded in truth and in fact, by a line seventy-one feet and three inches in length on the south side of that street, would such a discrepancy as had occurred in describing the length and limit of it in the partition in Chancery, conclude and estop, and *ipso facto* absolutely bar McDowell and wife, and all the other devisees, and everybody else claiming under them, or any of them afterward, in this or any other action, from disputing the accuracy, or contradicting the correctness of such a description or statement in the record of the partition, or from proving that the particular premises referred to and intended to be allotted and assigned in severalty by it, did actually contain before it was so curtailed in chancery on one of its borders, a line one foot longer than was designated in it? Remember the

object, as well as the function of the court in such a proceeding in partition, is not to ascertain, fix, or prescribe the precise limits of the several tracts of land devised by the testator, but it is simply to know the number and relative value of them, and then, if it be practicable without detriment to the parties respectively entitled to them, to equally divide and justly apportion them in severalty between the devisees according to their value, but conferring no greater or lesser estate,nor increasing or diminishing the quantity of land in any of them, other than as the same was vested in and owned by the testator at the time of his death and passed to his devisees under his will. And such was not only the sole function and province of the court in such a proceeding, but it was the sole design and intention of the parties to it.   Would it have altered the case, or changed the aspect of the question involved in it, had the partition been made in the same manner by voluntary deeds between the parties out of court ? But the principle of estoppel would not apply in the supposed case, because the manifest intention of the parties must prevail in the construction of a deed, and it will not be controlled by any thing contained in the preamble or recital of it, if the latter be erroneous, 3 *Washb. on Real Prop.* 368.

He admitted the validity of the decree in Chancery, and would not contend that there was any error in it, because as he considered it, the discrepancy referred to was not material or essential, and, therefore, it did not affect or impair the validity of it.   All he asked this court to do, was to say what was the land which McDowell and wife took under and by virtue of it.   Not by what precise number of feet and inches on this or that line it was limited and bounded, but what particular parcel, or separate portion, or tract of the real estate of the testator, they took under the devise and under the partition had in that court upon it, and was intended to be, and was, therefore, in fact, allotted and assigned to them by virtue of it.   The partition and decree should be construed reasonably, and with due regard to the evident design and object of it.

Turning to the description of the lot in question, as contained and set forth in that proceeding in partition, it would be found that the line referred to was described as "beginning at a stake on Shipley Street, and running thence north thirty three degrees east seventy feet and one-sixteen hundredths of a foot, to a stake in a line of Thomas Hyde's land," and which is now owned and was owned by the plaintiff in this case when the cause of action below originated. The stakes mentioned had long since disappeared, and the line of Thomas Hyde's land was the only boundary called for in it that remains, and which is stated in the deed to Boulden from Ferris' executors, to be seventy-one feet and three inches from the beginning of the line first mentioned on that street. We must, therefore, go to the line of Thomas Hyde's land, " because the number of acres or quantity, as well as the courses and distances mentioned in a deed, are merely matters of description of the land, and must yield to known boundaries or monuments, and when incompatible with the latter, must be rejected and discarded. 3 *Washb. on Real Prop.* 347. *Mann v. Pierson,* 2 *Johns.* 37. *Powell v. Clark,* 5 *Mass.* 356. *Lewellen v. Jersey,* 11 *M. & W.* 183. *Davis v. Rainsford,* 17 *Mass.* 207. *Bell v. Woodward,* 46, *N. H.* 315. *Hunter v. Lank,* 1 *Harr.* 10. *Parker v. Pratt,* 38 *Ver.* 545. *Jennings v. Monk's Executor,* 4 *Met.* 403.

But if the law of the case was not as he had thus presented and argued it, then whether there was not a part of the lot and premises on Shipley Street, as it belonged to, and was devised with the rest of his real estate by, Benjamin Boulden in common to the devisees named in his will, which remained unallotted and unassigned, and, therefore, undisposed of in that proceeding, and by the decree in partition, was a question to be determined by the jury; for upon the record of his title to the same there was manifestly, by reason of the discrepancy occurring in the record of the partition, a portion of the lot consisting of a strip of not less than one foot in width and extend-

ing the entire length or depth of it, and upon which the brick wall complained of was erected, that remained so unassigned and undisposed of by the partition, and the right and title to which consequently remained vested and unsevered in the devisees as tenants in common of it under the will; and as McDowell and wife so continued tenants in common of the one undivided fourth part of it, and by their deed, not only sold and conveyed the lot assigned to them in severalty in the partition, but also all their right, title and estate which had passed to them under that devise from Benjamin Boulden, to the lot as bounded by a line of seventy-one feet and one sixteen hundredths of a foot in length on the south side of Shipley Street, to Henry S. McComb, and he had sold and conveyed the same to his mother, Mrs. Martha McComb, she thereby became the tenant in common of the one undivided fourth part of that portion of the original lot; and if so, then neither she, nor any other person acting as her agent, or under her authority and direction in the matter, could be sued by any one in an action of trespass for any thing done upon it.

But there was one more ground on which he should contend that the court had erred in the instructions to the jury in this case, and that was, that even admitting that the partition was final and conclusive as between the devisees themselves and all persons claiming under them, it was not so as to the plaintiff in this suit, because he was not a party to the proceeding in partition, nor does he claim under any one who was a party to it, nor was his lot in any way concerned in, or affected by it. On the contrary, he was an entire stranger to it, and his property wholly foreign to it. Therefore, neither he nor his lot could in any event, or in any case be bound or affected by the decree in that partition. But the cardinal principle of estoppel is that it must be mutual and reciprocal, and bind alike both parties, or it binds neither. 2 *Smith's Ld. Ca.* 437, 438, 440. 1 *Greenl. Ev.* sec. 22. Could then the defendants in this case be bound by it, if he was not? The

partition so far as all its legal effects, results, or consequences were concerned, was wholly a transaction between the defendants and others, and not between the defendants and him; and what privity or connection could either he or his property have with it, that could entail upon him any of the obligations which it imposes, or entitle him to any of the benefits which it confers, in an action against the defendants or any other person?

*Patterson,* for the defendant in error. The only points on which the court below was asked to charge the jury were those embraced in the first and second errors assigned in this court, that the variance or discrepancy between the record of the partition, and the deed soon after following the decree in Chancery in that proceeding, from McDowell and wife to Henry S. McComb, in respect to the line in question, was not conclusive or material in the action, but if it was, then the residue of the lot as conveyed to Boulden, the testator, and which included the *locus in quo,* remained vested in the devisees as tenants in common under the will notwithstanding the partition, and McDowell and wife having by their deed conveyed to McComb all their right and title to the premises under the will, he and his mother after him under his deed to her, became tenants in common of it, and, therefore, no action of trespass would lie against her, or her agents for the wrong and injury complained of. And yet, the deed from McDowell and wife to H. S. McComb expressly refers to and states the premises conveyed by it, to be the same premises which had been allotted and assigned to them in severalty in that partition. This, however, was a much stronger case than any the counsel had cited, which were all cases of private partition by voluntary consent and mutual deeds *inter partes* out of court, whilst this was a judicial partition by the solemn decree of a high court of original jurisdiction in the premises, and of exclusive jurisdiction also in such a case when once it is instituted in that court, and the proceedings and final decree of which in such a case, is made

absolutely conclusive ·upon the parties and all claiming under them, by the express terms of the statute in such case made and provided. *Rev. Code* 289, *sec.* 12; and in that, and in all other respects, as to the share and interest of John McDowell and wife, in right of the wife, in all the real estate devised to her and the other devisees to be equally divided between them by the will of Benjamin Boulden, until duly appealed from pursuant to law. But the contention on the other side was to the effect, that it was the province and duty of the court in such a case, to submit to the decision of the jury the grave question whether or not, the Court of Chancery in its proceedings and final decree in the matter stated, had erred, and if so, to permit, and even direct, them to rectify the error and correct the record in that particular, so far as their verdict could substantially do so; or if the court should be of opinion that they could not do that, then to instruct the jury that it was, at least, competent for John McDowell and wife and Henry S. McComb at any time afterward, to correct it by private consent and agreement between themselves, or that they could, at all events, afterward execute a deed to him for the lot that would not be bound or affected by the record of the proceedings and decree in the Court of Chancery in that erroneous particular, which was of so much substance and importance in the action, that the whole case on· either side solely depended upon it.

But if the matter of the alleged error in the partition could have been properly inquired into or considered before the court below in this suit, or could now be before the Court of Chancery itself for reconsideration or revision, it would have to be shown in order to rectify it, that Benjamin Boulden was at the time of his death in the actual possession, either by himself or his tenant, of the strip of ground in controversy, which could not be done, for he never was in possession of it, and that was the reason no doubt, why the survey was returned as we find it in that court. Because no joint tenants or tenants in common, but such as are in possession of the premises claim-

ed by them,are entitled to partition in law. *Rev. Code* 286. 4 *Kent's Com.* 365. 9 *Cow.* 530. Benjamin Boulden and those claiming under him,never were in possession of the ground on which the wall in question was built, and, therefore, no such point was made in the trial of the case in the court below. There was some proof adduced in the case in regard to the erection of a partition fence between the lots, by Col. McComb in 1856, and a point was made in regard to mixed possession by both lot-owners of the *locus* now in controversy; but the brick wall now in question, was built still further over on the plaintiff's premises in 1868. Benjamin Boulden died in 1832, the partition was soon after made, and McDowell and wife sold to Col. McComb in 1833, and if none of the devisees or those claiming under them were in, even, the mixed possession with the plaintiff, of the precise ground where the wall was built in 1868, since 1833, the plaintiff had long before its erection, acquired an indefeasible title to the ground on which it was built by exclusive and adverse possession alone.

As to the second error assigned, he had only to say that the partition and decree in the Court of Chancery expressly purports on the record to be of all the lands and tenements whereof Benjamin Boulden died seized and possessed, and was, therefore, to be considered a complete partition of the whole of his real estate, and as such, it was final and conclusive until appealed from. To hold that any of the devisees, could by correcting the alleged error in it, claim under it any more than was assigned to him or her in severalty by it, would be to impair the justice and equality of it among them. A proceeding in partition is a real action. *Ahn. on Par.* 1 *Law Libr.* 20. It is also a proceeding *in rem*, and the sentence or decree of the court in such a case, is definitive, final and conclusive until appealed from. 11 *Serg. & Rawle* 430. Such decrees are conclusive, however erroneous, until annulled on appeal, and cannot be impeached collaterally. 5 *Penna.* 428. 56 *Penna.* 160,209, 346. *Stean v. Anderson,* 4 *Harr.* 209. *Doe d. Short v. Pretty-*

35

man, 1 *Houst.* 334.    4 *Wash.* 654. 2 *Smith's Ld. Ca.* 435.
The partition fixes the sole or several possession of each of
the parties in their respective allotments, and ascertains
and determines the limits and extent of the possession of
each of them in severalty, and the sentence or decree is as
final and conclusive in these, as in other respects, until
appealed from.    *Aln. on Par.* 1 *Law Libr.* 123.    A person
is sometimes precluded in law from alleging or denying a
fact in consequence of his own previous act, allegation or
denial to the contrary, and this preclusion is called an
estoppel.    It may arise from matter of record, or from the
deed of the party, or from matter in *pais.*    Thus any con-
fession or admission made in a court of record, whether it
be express or implied, will preclude the party from after-
ward contesting the same matter in another suit; this is
an estoppel by matter of record; and recitals or state-
ments in a deed, constitute estoppels by deed, and will
preclude the party from afterward denying in any action
brought upon it the fact so recited. *Steph. Pl.* 197.

But it was said on the other side that the intention of
the parties to a deed must prevail in the construction of
it; and admitting that to be so, he would turn to the deed
of McDowell and wife and see what it was they intended
to convey by it to H. S. McComb, and he found that it
recites the proceedings in partition, and expressly refers
to it and states that the premises granted and conveyed by
it, was the aforesaid described and allotted parcel of land
assigned to the said McDowell and wife in the said parti-
tion ; and by that recital in the deed he was estopped from
contradicting or controverting it, or claiming any more
land under it, than is described and designated in the par-
tition.    *Simmon v. Logan,* 1 *Harr.* 110.    *Simmon's Lessee
v. Hendrickson,* 3 *Harr.* 103.    *Inskeep v. Shields,*4 *Harr.* 345.
It had also been contended on the other side that an estop-
pel must be mutual and reciprocal, and bind both parties,
or it binds neither; and, therefore, the principle could not
apply in this case, because neither the plaintiff,or his prop-
erty was a party to, concerned in, or affected or bound.

by the partition in the Court of Chancery. But is there not an estoppel by admission, by recital in, and by acceptance of, the very deed on which the defendants had alone based their plea of *liberum tenementum* to the action, and upon the title of which they had sought exclusively to justify the act complained of? For it was upon the title and the estate claimed to be conveyed by the deed of McDowell and wife, to Henry S. McComb, that they had solely based the claim of Mrs. McComb to the whole of the lot in the action, and also their entire defence in both aspects of it. If then, they claim under it alone, as against the plaintiff in this suit, are they not at the same time as effectually bound, concluded and estopped by the admissions and recitals contained in it against them? There could be but one answer to such a question, for no party in any action between him and another can claim under a deed any more than it actually conveys to him, and he is, of course, bound at all times and every where, and in every case by the express limitations and restrictions of it. He would only say in conclusion that when it appeared conclusively from the whole record of a case that the proper judgment had been entered in it, the proceeding would not be reversed on error, even, if the court below mistook the law on some of the propositions reviewed during the trial; for if it appears by the record that the party was entitled to recover the judgment, it will not be reversed for an error which does not affect his right to recover in the action. *Houghton v. Slack*, 10 *Ver.* 520. *Harman v. Kelley*, 14 *Ohio* 502. *Hyman v. Cook*, 2 *Denio*, 201. 6 *Blackf.* 375. 4 *Ala.* 584.

*Gordon*, for the plaintiffs in error, replied.

WALES, J., delivered the opinion of the Court.

The questions suggested by the assignment of errors and to be decided by us, may be comprised in the simple inquiry, did the Superior Court err in instructing the

jury that in determining the length of the front line on Shipley Street, they must be restricted by the number of feet specified in the return and decree in partition? The substance of the charge to the jury on this point, as set out in the bill of exceptions, is in these words—"For the designation and definition of the line as to the length and extent of it on the street referred to, as fixed and ascertained by the partition and decree in the Court of Chancery, was not only material, but was final and conclusive as to that matter in the present action, and could not now be controverted or called in question here, or in any other collateral inquiry or proceeding between the parties to it, or those standing in the legal relation of privies in estate to them, provided they should find the facts proved to be such as the court had before stated to them." This was, in effect, the statement of the law of estoppel by record, leaving the jury to apply the same to the facts proved in the case.

Henry S. McComb and his co-defendants below, having put in the plea of *liberum tenementum* of Martha McComb, thereby admitted Schoen's possession of the *locus in quo*, and also the commission of the acts complained of as a trespass, thus raising the only question whether the small strip of land in controversy belonged to the said Martha or not, and making it incumbent on them to prove her title either by deed or other documentary evidence, or by an actual adverse and exclusive possession of twenty years; inasmuch as under this issue they undertook to show a title in her, which should do away with the presumption arising from the possession of the plaintiff below. 2 *Greenleaf on Ev.* 626. 2 *Selwin's Nisi Prius* 1337.

Resting their defense on the construction of the title papers, it became the duty of the court to inform the jury what was the legal effect of the conveyances and judicial records which had been submitted to them; and this we think was correctly done by the learned judge who delivered the charge.

There is a patent discrepancy between the description contained in the deed of Ferris' executors and that in the Chancery record of the Shipley Street property. Each gives the courses and distances and the metes and bounds of the lot. The deed describes a line of seventy-one feet and three inches on the street, while the record calls for a line of seventy feet and sixteen hundredths of a foot. There is nothing in the record sent here, or in the title papers, to show that as a matter of fact one description was more accurate than the other. How then were the jury to determine the true measurement? It does not appear that Martha McComb, or those under whom she claimed, had ever occupied or held actual possession of the land in dispute, or that Schoen, the plaintiff below, or his predecessors, Hyde or Lamborn, had encroached upon it without warrant or authority. It was only, therefore, by the application of the doctrine that the judgment or decree of a court of competent jurisdiction is conclusive on the parties to it and their privies, that a satisfactory result could be reached. In *Stean v. Anderson* 4 *Harr.* 214, it was held that the proceedings and judgment in partition are final and conclusive between the parties and all claiming under them, as to the title to the lands allotted to the several parties. An order of the Orphans' Court directing a sale of land for the payment of debts, is conclusive as to every matter necessary to the making of such order, and such matter cannot be inquired into collaterally in any other proceeding. *Martin's Lessee v. Roach,* 1 *Harr.* 548. See also 1 *Houston* 334, *Lessee of Short et al. v. Prettyman et al.* This rule can rarely, if ever, work injustice, for it is laid down as a corollary to the principal of estoppel by record, that it is no hardship on any one that he shall be bound by that which would have bound those under whom he claims as to the same subject matter. The reason and policy of the rule are also expressed in the familiar maxim "*interest reipublicae ut sit finis litium.*

The title of McDowell and wife had its immediate ori-

gin in the will of Boulden and the decree of partition.
The property was conveyed to Boulden by Ferris' execu-
tors whose deed, besides giving the line on Shipley
Street in feet and in inches, describes it as ending at Lam-
born's line on the North.   Frances S. McDowell was one
of the four devisees named in the will of Boulden, who
took his real estate in undivided equal shares as tenants
in common.   Partition was applied for in Chancery in
the usual manner, on the petition of Clark and wife, (the
latter being a devisee), the other parties in interest were
duly summoned and were represented in court by their
solicitor.   Commissioners appointed by the Chancellor to
divide the real estate among the parties entitled accord-
ing to their respective shares, made a return accompanied
with a survey and plot, allotting to Frances S. McDowell
and her heirs, in severalty, " No. 4," being the lot on
Shipley Street, and described in the return as having a
front line on that street of a certain length in feet and
the fraction of a foot, and terminating at its Northern
extremity at the line of Hyde's land.   This return and
allotment were approved by the Chancellor, and " or-
dered and adjudged to be and remain firm and stable
forever."   It is evident from an examination of the title
papers at this point, that McDowell and wife took no
greater quantity of land in severalty, than was allotted to
Frances S. McDowell.   The object and purpose of the
partition was to divide the whole of Boulden's real estate
among the parties entitled, in equal proportions, so that
each devisee might hold a part in severalty.   This was
done, or at least designed to be done.   A surveyor was
employed, a survey of each separate division and allot-
ment was made, and the courses and distances, metes and
bounds laid down on the plot annexed to the return of
the Commissioners.   McDowell and wife in the deed to
H. S. McComb recite both the conveyance from Ferris'
executors to Boulden with the particular description of
the lot therein contained, and also the proceedings in
Chancery containing the description returned by the

Commissioners and approved by the Chancellor; and their deed further recites, " whereas it is the intention of the said parties of the first part hereto by this indenture to convey all their interest in the said above described allotted one-fourth part of the land and premises aforesaid, to the said Henry S. McComb, his heirs and assigns ;" and concludes by granting to the said Henry S. McComb " all that the aforesaid described lot or parcel of land situate in the city of Wilmington, with the four substantial brick houses thereon erected." The title of H. S. McComb depends on that of his grantors and their deed to him, and he and those claiming under him are concluded from claiming title to any more land than was allotted to Frances S. McDowell by the decree in partition according to the courses and distances therein set out. The plaintiffs in error contend that the description in the deed from Ferris' executors should prevail over that of the decree. To yield to such a demand would be to allow a deed between individuals to control or become paramount to the judgment of a court of competent jurisdiction, and would contravene the statute which provides—" If upon the return of the commissioners it shall appear that partition of the premises has been made, as directed, and such partition be approved by the Chancellor, he shall thereupon enter a final decree that the said partition shall remain firm and stable forever; and such proceedings and decree shall be conclusive upon the parties and all claiming under them." *R. S. Chap.* 86, *Sec.* 12. On this point the charge of the judge was "that if the jury were satisfied from the evidence before them that the said John McDowell and wife were parties to the said proceedings in the Court of Chancery for the partition of the lands devised," then the decree in that court would be conclusive upon them and their privies. The record discloses that they were parties, specially summoned and represented by their solicitor at every stage of the proceedings.

It was maintained on the part of the plaintiffs in error

that if Martha McComb had not exclusive title to the whole of the land included in the description of the deed of Ferris' executors by reason of the discrepancy between that description and the decree in Chancery, then that she was tenant in common with the other devisees of Boulden. This position is based on the assumption that there was an error in the measurement made and returned by the commissioners, and that the description in the deed of Ferris' executors was the absolutely true and correct one, thus leaving an excess or surplus of land which remained undivided and still belonged to the devisees in common, and that McDowell and wife had conveyed all their right and title in such surplus to H. S. McComb. This objection is disposed of by the recital before mentioned, in the deed of McDowell and wife, to wit : that it was the intention of the grantors to convey all their interest in the said above described allotted one-fourth part of the lands and premises aforesaid," and by the fact that they actually conveyed the portion which had been assigned to Frances S. McDowell in severalty, to H. S. McComb and nothing more. If there was a surplus of land belonging to the Boulden estate, not included in the partition, it does not appear that any interest in such surplus had been transferred to H. S. McComb. The undivided estate, if there be any, must still belong to the devisees and is subject to their control. But it is hardly inferable from the facts that such is the case. The Shipley Street property was in one body, and is so described, in the petition on which the proceedings in Chancery were instituted.

The last point assigned for error is that the jury were not permitted to go beyond the number of feet specified in the Chancery record, in determining the length of the front line, notwithstanding there were other boundaries mentioned in the record from which the jury might have drawn a different conclusion. It is true, and was not denied in the argument, that fixed and permanent boundaries where they are known and referred to in a deed, or

decree, will prevail over courses and distances. *Hunter v. Lank.* 1 *Harr.* 10. But no visible monuments or objects are named in any of those title papers or documents as marking or limiting the northern end of the front line. All the proof demonstrates that where the line of McDowell ends on the North, the line of Lamborn and Hyde begins. In other words, the Northern boundary of McComb's lot and the Southern boundary of Hyde's lot is an identical but invisible line. Schoen's fence had to be torn down— the very act complained of as a trespass—to make room for the extension of the line as claimed by the defendants below, very properly, therefore, the jury was not left at liberty to infer that there might have been a mistake in the commissioners' return. On the contrary they were permitted to infer that a line of precisely the length mentioned in the return terminated at Hyde's corner. The Superior Court could not go outside of the Chancery record, to reconcile the difference in measurement. It is familiar law that a record imports such absolute verity that no person against whom it is producible shall be permitted to aver against it. In *R. v. Carlile*, 2 *Bar. & Adol.*, Lord Tenterden said, "the authorities are clear that a party cannot be received to aver as error in fact a matter contrary to the record." There are exceptions to this rule, but none of them cover the case before us. The Court below rightly instructed the jury to be guided by the description in the Chancery record in locating the Shipley Street line; and under all the circumstances it was the only safe instruction to give, for if matters that have been once solemnly decided, were to be again drawn into controversy there would be no end of litigation and confusion. The authorities cited and relied upon by the counsel for the plaintiffs in error, do not conflict with the foregoing views. In *Bell v. Woodward*, 46 *N. H.* 315, the Court allowed the introduction of extrinsic evidence to remove a latent ambiguity, and to explain what lands were intended to be included in a deed by the parties to it. The case of *Park v. Pratt*, 38 *Ver.* 545, arose out of a dis-

36

pute concerning a boundary line, and it was there decided that where there are two descriptions of the same line, one running by the compass, and the other with A's line, and parallel with the highway, the former shall be considered as a false description, and the latter as the true line. In neither of these cases had there been a previous adjudication of the rights of the parties, or of those under whom they claimed, and the Court was not called upon, in a collateral proceeding to consider the effect of a judgment or decree of another Court of competent jurisdiction in relation to the same subject matter.

Judgment affirmed.